## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REPRESENTATIVE TED LIEU, *et al.*,

        Plaintiffs,

        v.

FEDERAL ELECTION COMMISSION,

        Defendant.

Civ. No. 16-2201 (EGS)

## MEMORANDUM OPINION

This case involves the constitutionality of the Federal Election Campaign Act's ("FECA") limits on contributions to political action committees that make only independent expenditures. The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has held that contributions to such independent expenditure-only political action committees "cannot corrupt or create the appearance of corruption" and therefore limits on contributions to these groups are unconstitutional. *SpeechNow.org v. FEC*, 599 F.3d 686, 694 (D.C. Cir. 2010)(en banc). The upshot of this holding is that certain political action committees, commonly known as "Super PACs" can "receive unlimited amounts of money from both individuals and corporations" and "engage in unlimited electioneering communications, so long as their activities are not made 'in cooperation, consultation, or concert, with, or at the request or suggestion of' a candidate, his or her authorized political

committee, or a national, State, or local committee of a political party." *Stop This Insanity, Inc. Employee Leadership Fund v. FEC*, 902 F. Supp. 2d 23, 37 (D.D.C. 2012)(citation omitted). It is undisputed that this is the law of the Circuit.

Notwithstanding the D.C. Circuit's ruling in *SpeechNow*, Plaintiffs Representative Ted Lieu; Representative Walter Jones; Senator Jeff Merkley, State Senator (ret.); John Howe; Zephyr Teachout; and Michael Wager (collectively, "Plaintiffs") brought an administrative complaint against several Super PACs alleging violations of FECA when the Super PACs knowingly accepted contributions in excess of monetary limits set by FECA. The Federal Election Commission ("FEC" or "Commission") disagreed explaining that under *SpeechNow* the Super PACs actions were lawful. Accordingly, the FEC dismissed the administrative complaint.

Plaintiffs bring this action alleging the FEC acted "contrary to law" when it dismissed the administrative complaint against the Super PACs because the FEC relied on *SpeechNow*--an allegedly unlawful judicial ruling. Pending before the Court is FEC's motion to dismiss plaintiffs' complaint for failure to state a claim. Plaintiffs have the daunting task of persuading this Court to rule inconsistently with the D.C. Circuit's *en banc* opinion in *SpeechNow*. This Court cannot do so, therefore defendant's motion to dismiss is **GRANTED**.

## I. Background

Because the claims in this case involve several provisions of FECA, and the D.C. Circuit's interpretation of those provisions, the Court begins with an explanation of the statute and relevant case law.

### A. FECA and *SpeechNow*

FECA was enacted to "limit spending in federal election campaigns and to eliminate the actual or perceived pernicious influence over candidates for elective office that wealthy individuals or corporations could achieve by financing the 'political warchests' of those candidates." *Orloski v. FEC*, 795 F.2d 156, 163 (D.C. Cir. 1986)(*citing Buckley v. Valeo*, 424 U.S. 1, 25–26 (1976)). To that end, there are several provisions in FECA that limit the amount of money a person can contribute to a federal campaign. These limits often depend on who or where the contribution is coming from, and the amount of the contribution.

Relevant to this case are the limits on contributions made to political action committees.[1] FECA defines a "political committee" as "any committee, club, association, or other group of persons" that receives "contributions" or makes

---

[1] The term "political action committee or 'PAC' . . . normally refers to organizations that corporations or trade unions might establish for the purpose of making contributions or expenditures that [FECA] would otherwise prohibit." *FEC v. Atkins*, 524 U.S. 11, 15 (1998)(citing 2 U.S.C. §§ 431(4)(B), 411b).

3

"expenditures" "for the purpose of influencing any election for Federal Office" "aggregating in excess of $1,000 during a calendar year." 52 U.S.C. § 30101(4)(A), (8)(A)(i),(9)(A)(i). This definition has been further tailored by the Supreme Court to "only encompass organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate." *Buckley v. Valeo*, 424 U.S. 1, 79 (1976). Political action committees fall within the category of political committees as defined by the Act.

FECA sets several limitations on the contributions political committees may receive depending on the type of entity that receives the contribution. A political committee that is not authorized by a candidate or established by a national or state political party may not knowingly accept any contribution in excess of $5,000 per year from an individual. 52 U.S.C. § 30116(f). And, of course, an individual shall not contribute more than $5,000 per year to this type of political committee. *Id.* § 30116(a)(1)(C).

The $5,000 limit on contributions to political committees does not apply, however, to political committees that solely engage in independent expenditures. *See SpeechNow*, 599 F.3d at 694–95. Independent expenditures are defined by FECA as expenditures "that expressly advocate[] the election or defeat of a clearly identified candidate" and are "not made in

concert or cooperation with or at the request or suggestion of such candidate, the candidate's authorized political committee, or their agents, or a political party committee or its agents." 52 U.S.C. § 30101(17).

The inability to put limitations on contributions to independent expenditure-only political committees has led to "the genesis of so-called 'Super PACs.'" *Stop this Insanity*, 902 F. Supp. 2d at 37. Super PACS were born from the union of the rulings in two First Amendment campaign finance cases. In the first case, *Citizens United v. FEC*, the Supreme Court "conclude[d] that independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption." 558 U.S. 310, 357 (2010). Therefore, the Court held, the government did not have a sufficient anti-corruption interest in restricting corporations from engaging in political speech funded from the corporation's general treasury if that speech was in the form of an independent expenditure. *Id.* at 358.

In the second case, *SpeechNow*, the D.C. Circuit held that if under *Citizens United* there was no anti-corruption interest in limiting independent expenditures then there could not be an anti-corruption interest in regulating contributions to independent expenditure-only political action committees. 599 F.3d at 694–95. The D.C. Circuit acknowledged that the only

interest recognized by the Supreme Court as sufficiently important to outweigh First Amendment interests implicated by contributions for political speech was the interest of "preventing corruption or the appearance of corruption." *SpeechNow*, 599 F.3d at 692 (citations omitted). Applying the then-new precedent of *Citizens United*, the D.C. Circuit reasoned that if the Supreme Court ruled that limits on independent expenditures were unconstitutional, it necessarily follows that limits on *contributions* to political committees that engaged solely in independent expenditures are also unconstitutional. *Id.* This is because, like the independent expenditures in *Citizens United*, "contributions to groups that make only independent expenditures also cannot corrupt or create the appearance of corruption." *Id.* at 694. In other words, the government "has no anti-corruption interest in limiting contributions to an independent expenditure group" and therefore, the D.C. Circuit held, any limits on such contributions are unconstitutional. *Id.* at 695.

Enter Super PACs. Because these political action committees make solely independent expenditures, they are "permitted to receive unlimited amounts of money from both individuals and corporations." *Stop This Insanity*, 902 F. Supp. 2d at 37. This allows for an "unlimited [amount of] money to flow into the electoral process for express advocacy" for particular

candidates so long as the expenditures are not coordinated with that candidate. *Id.* at 38.

In light of *Citizens United* and *SpeechNow*, the FEC issued an advisory opinion explaining the *SpeechNow* ruling and its effects on the regulation of political action committees. FEC Advisory Op. 2010-11 (Commonsense Ten), 2010 WL 3184269 (July 22, 2010). The advisory opinion explained that the FEC's understanding was that it "necessarily follows" from *Citizens United* and *SpeechNow* "that there is no basis to limit the amount of contributions to" an independent expenditure-only political committee "from individuals, political committees, corporations and labor organizations," which are covered by 52 U.S.C. § 30116(a)(1)(C). *Id.* at *2. The advisory opinion also triggered FECA's safe harbor for "any person involved in any specific transaction or activity which is indistinguishable in all its material aspects" from the activity described in the opinion. 52 U.S.C. § 30108(c)(1)(B). Additionally, anyone who relies on a finding in an advisory opinion and does so in good faith "shall not, as a result of any such act, be subject to any sanction provided" by FECA. *Id.* § 30108(c)(2). Since issuing the advisory opinion, the Commission has not enforced the limits in 52 U.S.C. § 30116(a)(1)(C) when contributions are given to groups that make only independent expenditures. Def.'s Mot. to Dismiss, ECF

No. 39 at 11.[2]

FECA allows any person to file an administrative complaint with the FEC alleging a violation of the statute. 52 U.S.C. § 30109(a)(1); *see also* 11 C.F.R. § 111.4. After reviewing the complaint, and relevant submissions made by the administrative respondents, the FEC must determine whether there is "reason to believe" that FECA has been violated. 52 U.S.C. § 30109(a)(2). If the Commission dismisses the complaint, FECA allows "[a]ny party aggrieved" by the dismissal to file suit to obtain judicial review.[3] 52 U.S.C. § 30109(a)(8)(A). If the reviewing court concludes that the Commission's dismissal is "contrary to law," the court can "direct the Commission to conform with [that] declaration within 30 days." *Id.* § 30109(a)(8)(C).

**B. Procedural History**

Plaintiffs filed an administrative complaint against ten political action committees, all Super PACs, alleging that they knowingly accepted contributions in excess of the $5,000 per person per year limit set by FECA. *See* Am. Compl. ECF No. 36 ¶ 79 (citing 52 U.S.C. § 30116(a)(1)(C) and (f); 11 C.F.R. §§ 110.1(d) and (n)). The complaint also cited over 39 specific

---

[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the page number of the filed document.
[3] All such lawsuits must be filed in this district. *Id.* (providing that aggrieved parties "may file a petition with the United States District Court for the District of Columbia").

contributions to the Super PACs from over two-dozen contributors that were alleged to violate FECA's contribution limits.[4] Joint Appendix (J.A.), ECF No. 45 at 23–30; *Id.* ¶¶ 41–78.

In their administrative complaint, Plaintiffs recognized that the FEC in its Advisory Opinion had declared its intent to follow *SpeechNow's* holding that contribution limits as applied to contributions to independent expenditure-only political committees are unconstitutional. J.A. at 9. Plaintiffs, however, reminded the FEC that they were not bound to the *SpeechNow* decision and could "still enforce FECA's contribution limits in cases brought by or against other parties outside the D.C. Circuit." J.A. at 10. Another way around *SpeechNow*, argued plaintiffs, was for the FEC to refuse to acquiesce to the *SpeechNow* ruling even in the D.C. Circuit "as long as the agency is 'embarked on a rational litigation program designed to secure a reasonably prompt national resolution of the question in dispute.'" *Id.* (citing Samuel Estreicher & Richard L. Revesz, *The Uneasy Case Against Intracircuit Nonacquiescence*, 99 Yale L.J. 831, 832 (1990)). Therefore, plaintiffs invited the FEC "to reconsider, in light of later experience, its decision to acquiesce to *SpeechNow*." *Id.*

---

[4] For example, the Freedom Partners Action Fund, Inc. was alleged to have received contributions from four individuals, the Charles G. Koch 1997 trust, and the Mountaire Corporation of Little Rock, of over $13,000,000,000 total.

The FEC declined the invitation. The Commission voted unanimously to find no reason to believe that the administrative respondents, (*i.e.*, the Super PACs), had violated FECA. J.A. at 213–14. The Commission acknowledged plaintiffs' factual allegations and plaintiffs' arguments that *SpeechNow* was wrongly decided, but found that "the D.C. Circuit's decision in *SpeechNow* and the Commission's [advisory opinion] plainly permit the contributions described in the [c]omplaint, and [plaintiffs] do not suggest otherwise." *Id.* at 208. In light of plaintiffs' concession that "*SpeechNow* and [the advisory opinion] permit the conduct described in the [c]omplaint" the Commission ruled that it would be inconsistent to find that there was a "reason to believe that respondents violated the law." *Id.* at 210.

The Commission also noted that Super PACs were entitled to rely on the advisory opinion in which the Commission adopted the holding in *SpeechNow*. J.A. at 208. The Commission explained that individuals may rely on an advisory opinion as long as the person is "involved in the specific transaction or activity with respect to which such advisory opinion is rendered" or if the person is involved in a specific transaction or activity "which is indistinguishable in all its material aspects from the transaction or activity with respect to which such advisory opinion is rendered." *Id.* (citing 52 U.S.C. § 30108(c)(1)(A),(B)). The Commission further noted that FECA and

the Commission's regulation prohibit the Commission from sanctioning any person who acts in good-faith reliance on an advisory opinion. *Id.* (citing 52 U.S.C. § 30108(c)(2)).

The Commission also explicitly addressed its decision to acquiesce to *SpeechNow*. The Commission began by explaining that the doctrine of nonacquiesence "refers to an agency's conscious decision to disregard the law of one or more circuits to generate a circuit split that will result in judicial finality through Supreme Court review." *Id.* at 210 (citation omitted). The Commission reasoned that acquiescence therefore "assumes that the law forming the basis for the obligation to acquiesce remains in flux." *Id.* (citing *Johnson v. U.S.R.R. Ret. Bd.*, 969 F.2d 1082, 1092 (D.C. Cir. 1992)). The Commission explained that because "seven federal courts of appeals" have addressed the constitutionality of imposing limits on contributions to Super PACs and have all ruled that such limits are unconstitutional, "there is simply no basis to conclude that the law remains unsettled in a way that would begin to justify Commission nonacquiescence . . . even if the Commission had not already adopted the holding of *SpeechNow* in [the advisory opinion]." *Id.* at 210-11. Accordingly, the Commission dismissed the complaint.

Plaintiffs sought review of the Commission's decision by filing this law suit. In their amended complaint, plaintiffs allege that because the FEC's dismissal of the administrative

complaint "rested on legally erroneous conclusions about the constitutionality of [FECA]" the dismissal was "'contrary to law' under 52 U.S.C. § 3019(a)(8)(C)." *See* Am. Compl., ECF No. 36 ¶¶ 85–88.[5] Defendant's moved to dismiss the complaint for failure to state a claim. *See* Def.'s Mot. to Dismiss, ECF No. 39. Plaintiffs filed their opposition to the motion to dismiss and defendants have filed a reply. This case is now ripe for adjudication.

## II. Legal Standard

The FEC has moved to dismiss plaintiffs' amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). However, because this case requires the Court to review an agency's final action, the traditional Rule 12(b)(6) standard of review does not apply. *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Rather, when agency action is challenged, "[t]he entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching

---

[5] Plaintiffs also alleged a violation of the Administrative Procedure Act, 5 U.S.C. § 706(2), in Count II of their Amended Complaint, but have since dropped that claim. *See* Pls.' Opp'n., ECF No. 42 at 13 n.1 ("Plaintiffs do not oppose dismissal of Count II, alleging that the FEC'S dismissal of plaintiffs' complaint violated the Administrative Procedure Act."). Accordingly, Count II of the complaint is **DISMISSED.**

the merits at the 12(b)(6) stage." *Id.* Accordingly, in reviewing agency action, "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

A party challenging an FEC dismissal decision under FECA's judicial review provision, 52 U.S.C. § 30109(a)(8)(A), is entitled to relief if the dismissal decision is "contrary to law." *Orloski v. FEC*, 795 F.2d 156, 161 (D.C. Cir. 1986). "The FEC's decision is 'contrary to law' if (1) the FEC dismissed the complaint as a result of an impermissible interpretation of the Act, . . . or (2) if the FEC's dismissal of the complaint, under a permissible interpretation of the statute, was arbitrary or capricious, or an abuse of discretion." *Id.* (citations omitted).

## III. Analysis

The Court begins by addressing the threshold issue of the appropriate standard of review for the FEC's decision to dismiss a plaintiffs' administrative complaint when that dismissal is based on an interpretation of judicial precedent. The Court then turns to the merits and discusses whether the FEC's decision was "contrary to law" under FECA.

### A. Proper Standard of Review under FECA

The parties agree that the standard of review for a Commission's dismissal of an administrative complaint is whether the dismissal is "contrary to law" under FECA. 52 U.S.C.

§ 30109(a)(8)(C); *see* Def.'s Mot. to Dismiss, ECF No. 39 at 17; Pls.' Opp'n, ECF No. 42 at 14. The parties similarly agree that courts need not give binding deference to an administrative agency's interpretation of judicial precedent or the Constitution. Def.'s Mot. to Dismiss, ECF No. 39 at 17; Pls.' Opp'n, ECF No. 42 at 14. Where the parties part ways, however, is on the question of whether the "contrary to law" standard under FECA requires the Court to give any deference to the Commission's enforcement decisions, even if the deference is not conclusive.

Plaintiffs argue that review in this case should be *de novo*. Pls.' Opp'n., ECF No. 42 at 15. Plaintiffs acknowledge that in the typical case in which the FEC is interpreting a statute that it administers the Court is required to defer to the agency's interpretation. *Id.* at 14 (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843-44 (1984)). Plaintiffs further acknowledge that a Court must defer to an agency's dismissal which rests on a factual determination as long as that determination is supported by substantial evidence. *Id.* (*citing Hagelin v. FEC*, 411 F.3d 237, 242-43 (D.C. Cir. 2005)). Plaintiffs argue, however, that neither circumstance applies to this case because the FEC's dismissal was based on its interpretation of *SpeechNow*, and courts need not defer to an agency's interpretation of judicial precedent. *Id.*

The FEC argues that the Court should defer to the dismissal decision. Def.'s Mot. to Dismiss, ECF No. 39 at 18. The FEC recognizes that "courts are not obligated to give binding deference to an agency's interpretation of judicial precedent or the Constitution." *Id.* at 18 (citing *Univ. of Great Falls v. NLRB*, 278 F.3d 1335, 1341 (D.C. Cir. 2002)). The FEC argues, however, that in the context of a decision to not enforce FECA, an agency engages in a complicated balance of factors particularly in the agency's expertise including whether the agency is likely to succeed if it acts and whether the enforcement action best fits the agency's overall policy goals. *Id.* (citing *Heckler v. Cheney*, 470 U.S. 821, 831 (1985)). Defendants argue that because there are discretionary factors involved in a decision about whether to bring an enforcement action, the Court should defer to the agency's decision notwithstanding the fact that the decision turned on the interpretation of judicial precedent. *Id.*

The Court is persuaded that plaintiffs have the better argument. This is not the typical case of administrative review: the FEC's decision to dismiss the complaint was based exclusively on its interpretation of the D.C. Circuit's opinion in *SpeechNow*. The precedent in this Circuit is clear that "courts need not, and should not, defer to agency interpretations of opinions written by courts." *Citizens for*

*Responsible Ethics in Washington v. FEC*, 209 F. Supp. 3d 77, 87 (D.D.C. 2016)(collecting cases). This principle is "especially true where, as here, . . . the . . . precedent is based on constitutional concerns, which is an area of presumed judicial competence.'" *Akins v. FEC*, 101 F.3d 731, 740 (D.C. Cir. 1996), *vacated on other grounds*, 524 U.S. 11 (1998).

The FEC invokes *Heckler v. Cheney*, but that case is inapposite. 470 U.S. 821, 831 (1985). Although *Heckler* does stand for the proposition that there is a presumption that agency decisions not to enforce are unreviewable, FECA's express provision for the judicial review of FEC dismissal decisions rebuts that presumption. *See FEC v. Akins*, 524 U.S. 11, 26 (1998) ("In *Heckler,* this Court noted that agency enforcement decisions have traditionally been committed to agency discretion, and concluded that Congress did not intend to alter that tradition in enacting the APA . . . We deal here with a statute [FECA] that explicitly indicates the contrary.")(internal quotation marks omitted). Moreover, here, the dismissal decision was not rooted in a judgment call such as exercising prosecutorial discretion or policy-based justifications, but rather an interpretation of judicial precedent. In other words, the decision was not based on discretionary factors that would require the Court to defer to the judgment and expertise of the agency. Accordingly, the Court

will not afford deference to the FEC's interpretation of judicial precedent defining the protections of the First Amendment as it relates to the issues in this case.

**B. Review of the FEC's Dismissal Decision**

Plaintiffs argue that the FEC acted contrary to law in its interpretation of *SpeechNow* because its decision to dismiss the administrative complaint rested on a judicial ruling that was contrary to law. Pls.' Opp'n., ECF No. 42 at 17. Plaintiffs concede that the D.C. Circuit's ruling in *SpeechNow* "voided the long-established statutory limits for *contributions* to any political committee that restricts its spending to independent expenditures." Am. Compl., ECF No. 36 ¶ 2 (emphasis in original). However, plaintiffs argue that *SpeechNow* does not stop the FEC from declaring the Super PACs' actions as unlawful. Pls.' Opp'n., ECF No. 42 at 19.

In *SpeechNow*, the D.C. Circuit sitting *en banc* determined that FECA limits on contributions could not be constitutionally applied to independent expenditure-only political action committees. 599 F.3d at 694–96. The D.C. Circuit began by recognizing that "although contribution limits do encroach upon First Amendment interests, they do not encroach upon First Amendment interests to as great a degree as expenditure limits." *Id.* at 692. The Court explained that expenditures and contributions are treated differently because, "in 'contrast

with a limitation upon expenditures for political expression, a limitation upon the amount that any one person or group may contribute to a candidate or political committee entails only a marginal restriction upon the contributor's ability to engage in free communication.'" *Id.* (quoting *Buckley*, 424 U.S. at 20–21).

The D.C. Circuit held that although the standard for restrictions on *contributions* is less stringent than the standard for *expenditures*, the Act's contribution limit was unconstitutional under either standard because the government has no valid "interest in limiting contributions to independent expenditure-only organizations." *Id.* at 696. The Court explained that the only interest recognized by the Supreme Court as sufficiently important to outweigh the First Amendment interests implicated by contributions for political speech is the interest in "preventing corruption or the appearance of corruption." *Id.* (citations omitted). However, in light of the Supreme Court's ruling in *Citizens United* that independent expenditures could not corrupt or create the appearance of corruption, the D.C. Circuit held that it "must conclude" that "the government has no anti-corruption interest in limiting contributions to an independent expenditure group." *Id.* at 695. Since the government had zero interest in limiting contributions to groups that make only independent expenditures, the D.C. Circuit reasoned that the implicated First Amendment interests outweighed the

government's non-existent interests. *Id.* As the D.C. Circuit put it, "something . . . outweighs nothing every time." *Id.* (citation omitted).

Plaintiffs point out several alleged flaws in the D.C. Circuit's decision. Plaintiffs argue that *SpeechNow*: (1) failed to appreciate the distinction between contributions and expenditures; (2) rested on a logical fallacy that if expenditures cannot corrupt then contributions cannot corrupt either; (3) failed to appreciate a regulatory interest in limiting contributions; (4) misinterpreted the holding in *Citizens United*; and (5) developments since *SpeechNow* require its reconsideration. Pls.' Opp'n, ECF No. 42 at 23–38; *see also id.* at 26 ("The bottom line of the *SpeechNow* opinion--that contributions to super PACs cannot corrupt--is plainly wrong.").

Plaintiffs' acknowledge that the D.C. Circuit's interpretation of *Citizens United* in *SpeechNow* binds this Court unless *SpeechNow* has been overruled by either the D.C. Circuit sitting *en banc*, or the Supreme Court. Pls.' Opp'n, ECF No. 42 at 23. There is no D.C. Circuit case that purports to overrule *SpeechNow*. The only Supreme Court case the Plaintiffs cite that postdates *SpeechNow* and therefore could have possibly overruled it is *McCutcheon v. FEC*, 572 U.S. 185 (2014)(plurality opinion). In *McCutcheon*, a Supreme Court plurality held that an aggregate limit on the amount an individual can contribute to a candidate

or national party was unconstitutional.[6] *McCutcheon*, 572 U.S. at 194. The Court held that the aggregate limit on contributions was more than a "modest restraint upon protected political activity" because the limit functionally prohibited an individual from fully contributing to primary and general elections campaigns of ten or more candidates.[7] *Id.* at 204. In balancing the First Amendment interest with the government's burden of showing that the aggregate limits further the permissible objective of preventing *quid pro quo* corruption, the Court stated "there is not the same risk of *quid pro quo* corruption or its appearance when money flows through independent actors to a candidate, as when a donor contributes to a candidate directly." *Id.* at 210. The Court also noted "[t]he absence of prearrangement and coordination of an expenditure with the candidate or his agent . . . undermines the value of the expenditure to the candidate[,] but probably not by 95 percent." *Id.* at 214.

Plaintiffs point to the *McCutcheon* decision and argue that the Court recognized that "the lack of coordination may make an

[6] The base limit, which restricted how much money a donor may contribute to any particular candidate or committee, was not challenged.

[7] The base limits were such that an individual would reach the aggregate limit after contributing the max base amount, $5,200 each, to nine candidates. Therefore, the aggregate limit functioned as an outright ban on further contributions to any more candidates. *McCutcheon*, 572 U.S. at 204.

expenditure worth less but not worthless." Pls.' Opp'n., ECF No. 42 at 33. And therefore, plaintiffs argue, independent expenditures cannot be wholly non-corrupting since they retain some value. *Id. McCutcheon*, however was not about independent expenditures but rather contributions directed to a particular candidate or party committee. *Id.* at 193-94. In any event, *McCutcheon* did not purport to overturn *SpeechNow* or *Citizens United*.

The Court recognizes that there is some tension between *SpeechNow* and other Supreme Court decisions. But that tension flows from inconsistencies between *Citizens United* and prior Supreme Court campaign finance decisions. *See McCutcheon*, 572 U.S. at 240-45 (Breyer, J., dissenting)(explaining statements in *Citizens United* about proper contours of corruption "conflict not just with the language of [prior precedent] but with . . . the very holding[s]" of prior Supreme Court cases). Nevertheless, the D.C. Circuit has spoken on the issue--limits on contributions to Super PACs are unconstitutional--and the D.C. Circuit's reasoning is binding on this Court. Plaintiffs point to no Supreme Court cases which show that *SpeechNow* has been overruled.

Plaintiff's allegations about the violations of the Super PACs fall squarely within the holding of *SpeechNow*. It cannot be said that the FEC's determination, which was based on *SpeechNow*,

was contrary to law. To do so would be tantamount to a declaration that binding precedent of the D.C. Circuit was unlawful. And that is not something this Court is prepared to say.[8]

## IV. Conclusion

This case centers on the balance of two competing interests. On one hand, "[t]here is no right more basic in our democracy than the right to participate in electing our political leaders . . . [which includes] contribut[ing] to a candidate's campaign." *McCutcheon*, 572 U.S. at 191. On the other hand, "[t]o say that Congress is without power to pass appropriate legislation to safeguard an election from the improper use of money to influence the result is to deny to the nation in a vital particular the power of self protection." *McConnell v. FEC*, 540 U.S. 93, 223–24 (2003)(alterations and citation omitted). In *SpeechNow*, the D.C. Circuit struck that balance and ruled that any contribution limits to independent expenditure-only groups (*i.e.*, Super PACs) were unconstitutional because the government has absolutely no anti-corruption interest in stopping contributions to such groups. 599 F.3d at 695. The FEC followed that opinion in deciding to dismiss the

---

[8] Because the FEC correctly applied *SpeechNow* in dismissing the administrative complaint, the Court need not decide whether the Commission erroneously acquiesced to *SpeechNow* or whether the FEC'S reliance on its advisory opinion was contrary to law.

administrative complaint against the Super PACs in this case.

Accordingly, the FEC did not act contrary to law, and

defendant's motion to dismiss is **GRANTED**.

    **SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
            **United States District Judge**
            **February 28, 2019**